Matter of E.F. v F.F. (2005 NY Slip Op 52255(U))

[*1]

Matter of E.F. v F.F.

2005 NY Slip Op 52255(U) [10 Misc 3d 1078(A)]

Decided on December 16, 2005

Family Court, Westchester County

Edlitz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 16, 2005

Family Court, Westchester County
In the Matter of E.F., Petitioner/Respondent,
against
F.F., Respondent/Petitioner.
V-03XXX-04/04A

Sandra B. Edlitz, J.
Each party to these post-judgment proceedings seeks modification of the Judgment of Divorce from joint custody to sole custody. The issue in the father's case is whether the mother's fourth allegation of sexual abuse of the child involving the father and her request of the Court to restrict his access to the child constitutes a change of circumstances to modify the award of joint custody with physical residence to the mother, and if so, whether it is in the best interest of the child for sole custody and physical residence to be awarded to the father. The mother in her petition alleges the father is an unfit parent based on the sexual abuse allegations and requests his visitation be eliminated or supervised. The Court finds that there has been a sufficient change of circumstances and it is in the best interests of the child for her father to be granted sole custody.
The parties to this custody proceeding were married on September 7, 1991. There is one child of the marriage, born on July 27, 1995. They were divorced by Judgment
 of Divorce ("Judgment") dated October 11, 1999 in the Supreme Court of the State of New York, Westchester County ("Supreme Court"). The Judgment incorporated a Stipulation of Settlement ("Stipulation") entered into between the parties on the record in Court on July 30, 1999, and a written stipulation regarding custody, dated July 30, 1999, which survives and is not merged in the Judgment, and pursuant to which the parties share joint custody of the child, with primary physical custody to the mother. The Supreme Court did not retain exclusive jurisdiction to modify the Judgment. The father was awarded a visitation schedule that consisted of Wednesday evenings between 5:30 p.m. and 7:30 p.m.; alternate weekends beginning Friday evenings at 6:00 p.m. through Sunday at 6:00 p.m.; and two weeks summer vacation in July and two weeks in August. The order also made provisions for holidays.
The Petitioner/Respondent, E.F. ("father") and Respondent/Petitioner, F.F. ("mother") each seek modification of the Judgment and sole legal and physical custody of the child. The [*2]child has lived with her mother throughout her life. The father argues that the mother's repeated fourth false accusation of sexual abuse, is indicative of the mother's emotional instability and her attempts to frustrate his relationship with his daughter and that it is in the child's best interest that the Judgment be modified to award him sole legal and physical custody. As discussed hereinafter, the Court finds that her fourth allegation of sexual abuse of the child is a sufficient change in circumstance, in that the mother, in part of a continuing pattern of attacks on the father in which she asked the Court to be her partner, interferes with and compromises his relationship with the child and, potentially, compromises the child's future development. The Court finds that it is in the child's best interest for custody to be awarded to the father in that continued joint custody and physical residence to the mother is detrimental to the child's current and future development.
On January 5, 2004, the mother filed a Family Offense Petition against the father alleging in pertinent part, that "the father returned our eight year old daughter, home after a two day overnight visitation. As I was putting her to bed, she told her mother that she ate a hairy hot dog' She described it as brown with lines. It was a boy's weenie with gray, curly hair around it. She said white stuff came out of it and it was disgusting and tasted bad". She asked for an Order of Protection for herself and the child and that the father's visits with the child be supervised as the child was sexually abused while in his care. Based on the mother's ex parte application, the Court issued a Temporary Order of Protection against the father on behalf of the child and suspended all his visitation. On February 4, 2004, the Court ordered weekly supervised visits between the father and child at Supervised Visitation Experts.
On April 9, 2004, the mother's Family Offense petition was dismissed with prejudice after a fact-finding hearing. The Order for supervised visits was terminated and the father was allowed to resume unsupervised visitation.

On February 18, 2004, the father filed a petition seeking sole legal and physical custody of the subject child. In his petition, the father alleges, in part, that the mother subjects the child to psychological abuse and interferes with his relationship with the child. He also alleged that the mother is emotionally unstable and has made repeated and false child abuse allegations against him causing the child unnecessary emotional distress.
On March 9, 2004, the mother filed a petition seeking Enforcement/Modification of An Order of Another Court. The mother sought sole legal and physical custody of child and an order that visitation should be eliminated or limited to supervised visitation.
Forensic evaluations were ordered on March 10, 2004 and received on October 13, 2004.
The fact-finding hearing on both petitions commenced on September 24, 2004, and continued on December 3, 2004, December 6, 2004, January 21, 2005, February 7, 2005, February 9, 2005, February 10, 2005, February 17, 2005, February 23, 2005, April 22, 2005, May 16, 2005, July 29, 2005, and concluded on December 6, 2005. There were long recesses where it was not possible to schedule the continued hearing in part due to illnesses of counsel and of the presiding judge. The Court has had a full opportunity to consider the evidence presented having heard the testimony offered, two in camera interviews of the child and reviewed exhibits received in evidence. All the attorneys in this matter presented the position of their client fully and professionally. The Court was in the unique position to evaluate the demeanor and credibility of the witnesses and finds the father infinitely more credible than the mother.
The Law Guardian, as hereinafter discussed, supports a finding that there is a change in circumstances and it is in the best interests of the child for sole custody to be awarded to the father.
[*3]
The Court has heard the testimony of: the father, the mother, Putnam County Department of Social Services ("DSS"), Child Protective Services ("CPS") Worker; Westchester County Department of Social Services ("DSS") Senior CPS Case Worker; and the child's therapist.
The Court has considered and reviewed the following documents submitted into evidence: Westchester Jewish Community Services Forensic Evaluation prepared in 2004 by Dr. L, Ph.D in relation to the instant modification petition; a 1999 Court Psychological Evaluation of the mother prepared in 1999 by Dr. S., Ph.D., in conjunction with the parties' divorce action; a Domestic Incident Report from the Town of Cortlandt dated August 29, 1998; Department of Social Services report dated January 7, 2004; Department of Social Services, Putnam County Case Record;
On August 1, 2005 and December 6, 2005 the Court conducted in camera interviews of the subject child. These in cameras were of vital importance in the Court's deliberations and Decision and Order. In the first interview initially, the subject child appeared frightened, like a deer caught in the headlights. It seemed as if she wanted to flee. She warmed up during the session and opened up. In the second in camera with the subject child, again, initially, she seemed anxious, and exhibited in an infantile manner. The subject child quickly relaxed and engaged in conversation. The Court got a good picture of the child during the two interviews. The subject child is ten-years old. Although she appears younger than her stated age, the Court found her to be articulate and appropriate in her demeanor and responses. Both the testimony and in cameras revealed the following: the mother is easily excitable, anxious, tends to infantalize the child, tending to make her fearful. The mother lets her resentment of the father show in her discussions with and in her treatment of the child. The child is clearly shaken by the mother's behavior which impacts the visitation. The father is more even tempered and relaxed. He is controlled, deliberate, and always appropriate. The subject child is comfortable with her mother and clearly enjoys being with her father. Neither in camera shed any light on the "hairy hot dog" allegations.
There are two primary issues for the Court's determination of the father's application. The first issue is whether there has been a sufficient change in circumstances in order for the court to entertain the petition requesting a change in custody. The change in circumstances must reflect a real need for change in order to insure the continued best interest of the child. See, Carnike v. Kasson, 291 AD2d 680, 737 N.Y.S.2d 432 (3d Dept 2002) and Russo v. Russo, 257 AD2d 926, 684 N.Y.S2d 350 (3D. The Judgment entered in 1999 awarded the parties joint custody of the subject child. Prior to the Judgement, there were three investigations of the father by DSS made by or involving the mother's claim that the father sexually abused the child. They were investigated and unfounded by DSS and not substantiated in any Court. The parties were awarded joint custody by the Supreme Court.
The father alleges that there has been a change of circumstances that warrant a change in custody in that on January 4, 2004, the mother filed a Family Offense Petition against him on behalf of the child reporting sexual abuse of the child in his care and requesting supervised visitation with the child. Prior to the Judgment, the mother made or was involved in three allegations of alleged sex abuse involving the father that were investigated and "unfounded" by DSS. The first allegation was made by the mother on May 12, 1997. The second allegation was made by the mother on September 25, 1997. The third allegation was made on October 3, 1997 by a friend of the mother based on a conversation with the mother. All three reports were investigated by DSS and "unfounded". This fourth allegation is a change of circumstances in that the mother has newly embarked or re-embarked, on a campaign of making unwarranted and false accusations involving the father and alleged sexual abuse of the child, evincing the intent of the mother to use the child protective agencies and the Courts to assist her in seeking to limit, diminish, stop or control the child's relationship with her father. With each allegation, the father is questioned and investigated. The father's visitation with the child has been suspended or [*4]supervised. Despite three allegations of sexual abuse, the Judgment awarded the parties joint custody of the child. Now, the fourth allegation of sexual abuse and the mother's petition seeking to restrict the father's contact with the child, is a renewed attempt, by the mother, without a sound basis in fact, to interfere with and/or control the relationship between the father and child. The Court finds that the mother's fourth unwarranted and uncorroborated attack on or involving the father, and her request in Court that the father's access to the child be restricted, constitutes a change of circumstances. The Court's determination is not based on the conclusions of DSS or any agency, but on the Court's own evaluation of the evidence. There is no credible evidence that the father sexually abused the child or permitted abuse while the child was in his care.
The second issue is whether it is in the child's best interest for there to be a change in the current custody arrangement. The father alleges that the mother frustrates his relationship with the child. It is an established legal principle that interference with the relationship between a child and a non-custodial parent by the custodial parent is an act so inconsistent with the best interests of the child as to per se, raise a strong probability that the offending party is unfit to act as a custodial parent. In the Matter of Carl J.B. v. Dorothy T., 186 AD2d 736, N.Y.S.2d 53 (2d Dept 1992). It has been previously recognized that a mother's repeated allegations of sexual abuse that were unfounded warranted a change in custody (see, Amanda B., v. Anthony B., 13 AD3d 1126; Matter of Guidice v. Burruano, 255 AD2d 911; and Matter of Tranelli-Ashe, 195 AD2d 972).
These cases are difficult. There are no absolute rules. Each case must be determined based on its unique set of facts. False allegations of sexual abuse do not warrant an automatic change in custody . (See, John A. v. Bridget M., 16 AD3d 324, 791 N.Y.S.2d 421). In this case, regardless of the details or form that the false allegations take, they are destructive. They have an impact on the child now and are likely to damage the child in the future. The parents are both educated and bright individuals. The father lives with his new wife. The mother's oldest child seems to move in and out of the home based on his behavior. The father's home environment is stable and can accommodate his daughter.
Although the child has always resided with the mother, and stability is important, the child's emotional stability will blossom from a change in custody.
In applying the law to the facts of the case before it, the court has considered all of the testimony and exhibits adduced at the hearing together with the in camera interviews. In coming to its conclusion, the Court considered in part the factors discussed hereafter.

Although the January 1, 2004, allegation of sex abuse of the child by her father was investigated and substantiated by the CPS caseworker, the Court finds no sound basis for her conclusion. Indeed she did not "indicate" the mother's new claim of abuse but a prior claim that had been "unfounded". The CPS caseworker testified that her investigation found that nothing occurred on or about January 2, 2004. She "substantiated" her report concluding that sex abuse occurred in the past. Specifically, the CPS caseworker testified that she indicated the report based on incidents that the child reported occurred in or about November 2003 when she visited with her father while he was living in the Bronx, New York. The CPS caseworker did not ask the child if she went to the doctor after the incident. The CPS caseworker did not ask the child if she spoke to the police. The CPS caseworker then spoke to the mother and failed to ask the mother anything about this alleged incident. The CPS caseworker did not ask the mother if the child disclosed such an incident. and if she did, whether the child went to the doctor or whether the incident was reported to police. The CPS caseworker interviewed the father and never asked him about this alleged incident. She never even asked him where he was living in or around [*5]November 2003. There was evidence that the father was not living in the Bronx at that time. In addition, although the report indicated that the alleged perpetrator was "Bob", the caseworker never inquired if the child was around any other men. Despite the conclusion of the CPS caseworker, DSS took no action regarding this report other than to mark it indicated. DSS did not file a neglect/abuse petition against the father, or inquire as to if/when the father would have unsupervised contact with the child or ask the father to voluntarily engage in services or programs. The CPS caseworker testified that she found the child credible and that inconsistences in the child's statements did not diminish her findings that there was "some credible evidence" to substantiate the allegation of sex abuse. This Court gives no credence to the CPS caseworker's conclusions.
The Court ordered forensic evaluation prepared by Dr. L.for the Westchester Jewish Community Services ("WJCS"). The report indicated that the metaphorical speech attributed to the child does not seem characteristic of a child. The opined and the phrase I ate a "hairy hot dog" seems an unlikely way for a child to describe mouth to genital contact. While adults might make the connection between a hot dog and a penis, Dr. L. opined that a child, especially one who has been recently sodomized would not use such a fanciful metaphor. Dr. L. noted that the child seemed comfortable with father and comfortable when interacting with her father and A. ("his wife") together. Dr. L. thought this significant because in his experience, children who have been abused let you know that there is a problem, even if they do not want to talk about it directly, by either avoiding or over-compensating with the abusive parents. No such behavior was noted here. It was also noted that there was no report or evidence that the child has been traumatized other than the mother's report that the subject child cried and vomited the night of the alleged disclosure. In fact, one of the child's therapists specifically considered and excluded a post-traumatic stress disorder diagnosis for the child.
Dr. L. opined that the mother may have engaged in egregious false accusation or it may be possible that she is hypervigilant regarding sex abuse. Dr. L. explained that the mother may be hypervigilant as a result of her training and experience (until recently she worked for DSS) and this may have contributed to a misinterpretation of what happened to the child. Dr. L. explained in his report that this bias toward discovering abuse may lead to well-meaning, but at times, misdirected, attempts to pull information that is assumed to be hidden from the child. The accuser's goal is to uncover the event. The child's goal is to please the adult and a false allegation takes flight. Dr. L. stated that the accuser may egregiously contrive a false allegation in retribution for a slight or other event. Overall, the evaluation provided no answer regarding what, if anything happened to the child. There was no recommendation regarding custody. The report is only one factor the Court considered in its decision.
The mother's testimony in support of her concerns about sexual abuse was incredible. (The Court did not consider testimony regarding the father's drug use during the marriage in its decision. The issue of alcohol and drug use and alleged acts of domestic violence are subsumed in the Judgment. There is no credible evidence that drug or alcohol use is an issue). Regarding the child's disclosure, the mother testified that the child arrived home around 8:00 p.m. on January 1, 2004 after spending New Year's Eve with her father. According to the mother, the child seemed fine until bedtime. The child ate, she watched television and then suddenly at bedtime, she acts as if she's "having an emotional breakdown" crying, gagging and spitting up. According to the mother, the child told her that "I ate a hairy hot dog". When the mother asked her whose hot dog it was, the child replies "Bob's". At the time the mother was employed by CPS for DSS and has been trained regarding allegations of sex abuse and ensuing investigations. The mother did not call "911", she did not call the State Central Registry, she did not take the child to the emergency room and she did not call the father.
[*6]
The mother testified that just a few days after the child's disclosure, the child had a performance at church. The father and step-mother attended and when the child saw them she asked her mother if she could talk to them. The mother gave her consent for the child to say hello to her father. Inexplicably she then left the child with the father and went home. This occurred
approximately three days after the child's disclosure, and a day before the mother sought a temporary order of protection from the Court against the father. The mother's actions in leaving
 the child unsupervised with the father whom she alleges sexually abused the child or at the very least, allowed the child to be sexually abused while in his care, is inconsistent with her protestations.
As stated earlier, the Law Guardian supports an award of custody to the father. He noted that he represented the child as Law Guardian from the first allegation of sexual abuse in Family Court, throughout the Divorce, and in post-Judgment proceedings in Family Court. Although he believes that both parents are committed to the child, he noted he has seen the impact of the mother's accusations on the child over time. The Law Guardian supports the father's allegations as to the change of circumstances and argues, also, that the change in circumstances was that the mother renewed and expanded allegations that were settled in the Judgment and refused to move forward from the Judgment. He notes the child appears infantalized by the mother, that the mother will not let the child grow, that the mother will not let the child have a relationship with the father unless she can control it, and that the child's development has been stymied because of the mother. The Law Guardian argues that a change of custody will provide the child with the best avenue to grow up in an environment where she can enjoy her relationship with one parent without feeling that she is betraying or letting the other parent down, and to become a well rounded adult. Although the position of the Law Guardian is but one factor for the Court to consider, it is well reasoned and has added import given the Law Guardian's connection with this matter over time.

The Court concludes that the actions by the mother, whether she egregiously filed a false allegation or she may be hypervigilant regarding sex abuse due to experience or training, were detrimental to the child and her relationship with her father such that the mother is unfit to act as the custodial parent. The mother contradicts herself. The mother maintains that she believes the father did not sexually abuse the child, but her actions and demeanor, including body language in Court, contradict her statements. The mother states that she wants the father to be actively involved in the child's life but has accused him of sexually abusing the child four times. The mother then protests that she believes that the father sexually abused the child in the past. The DSS caseworker involved in the early investigations, testified that the during her investigation of the first report, the mother retracted her statements and advised the caseworker that she had made up the allegations because the parties were in the midst of a marital crisis and she overreacted and made statements that were not true. Regarding the second report of sexual abuse, the mother claimed that she was forced to make that report under threats that her children would be taken away from her. As to the third report, the mother claims that she did not know the identity of the source of that report until it was revealed in court. The Court finds it incredible that the mother did not know the identity of the person ( her friend) who alleged in pertinent part, that for the last three months, dad has taken twenty-one month old, the subject child, into the bathroom with him and closed the door.
The mother claims that she has lived "above and beyond" the Judgment. The evidence, including that of the in cameras, does not support this. Although the mother did not overtly [*7]withhold the father's access to or deny his visitation with the child, without Court Order, it is clear that the mother attempted to frustrate the father's efforts regarding access and controlled how and when the father would see the child. There is evidence that the mother intrudes subtly or overtly from afar when the child visits the father. There is evidence her action induces conflict in the child. There is evidence the mother adds stress to the child's visitation. The Court declines to amplify these points further to protect the confidentiality of the in cameras. In addition, the evidence showed that the mother undermines the father's authority as a parent to the child.
The Court, after a review of all the evidence, including the two in camera interviews is in the unique position to observe the demeanor and assess the credibility of the witness and the character, temperament and sincerity of the parties involved, (see Eschbach v. Eschbach, 56 NY2d 167, 173-174, 451 N.Y.S.2d 658), does not accept that the mother acted in good faith, using sound judgment, in making these allegations. The observation of the witnesses and assessment of demeanor and credibility were very important and weighed heavily in the Court's conclusions. The credible testimony presented does not establish that the child was sexually abused by her father. Regardless, of whether the mother maliciously fabricated the allegations to frustrate the father's visitation or the allegations were a product of the mother's hyperviligance or other wrong thinking, the mother's inability to foster the father's relationship with the child makes her unfit to be the child's custodian. This is not a case where therapy for the mother is an answer to the problem. The mother asks the Court to restrict the relationship between the father and the child. It is clear without a change of custody, the mother will continue to attempt to limit, stop or control the child's relationship with the father and otherwise impact her future development. The long term emotional best interests of this child mandates a change of custody to the father. The father, an educator, will provide the child with a calm, relatively stress free environment that will allow her to grow into a confident adult able to establish and maintain loving relationships not only with her father and mother, but also with peers, significant others, future spouses, other family members, and that would encourage a loving, meaningful, unobstructed relationship between the child and the mother. His wife is appropriate in her role as step-mother . Giving him custody will permit the child's development to blossom. To continue custody with the mother would impede the child. The best interest of this child is served by awarding custody to the father. Accordingly, it is hereby
ORDERED, that the father's petition is granted and it is further
ORDERED, that the Judgment is modified and the father shall have sole legal and physical custody of the subject child; and it is further
ORDERED, that the transfer of custody shall occur at 10:00 a.m. on December 25, 2005 at which time the father shall receive the child at residence of mother; and it is further
ORDERED, that the father shall consult with mother on all issues regarding the child's health, education and welfare, and he shall have final decision-making; and it is further
ORDERED, that the mother shall have access to child's school and medical records and providers; and it is further
ORDERED, that the mother shall have alternate weekend visitation with the child effective December 30, 2005 at 6 p.m. Such visitation will occur Friday at 6:00 p.m. to Sunday at 7:30 p.m. The mother shall pick up the child at the father's residence and return her to the father's residence; and it is further
ORDERED, that when there is a Monday holiday following the mother's visitation, such visitation shall be extend through Sunday until Monday at 7:30 p.m.; and it is further
[*8]
ORDERED, that the mother will have the child on Mother's Day and the mother's birthday each year. The father will have the child on Father's Day and the father's birthday each year. This supercedes the alternate weekend schedule. Such visitation to begin at 10 a.m. and end at 7:30 p.m.; and it is further
ORDERED, that the parties will alternate the December Holiday, Winter and Spring School Vacations. The parent who has the child from Christmas Day as hereinafter set forth, shall have the child until New Year's Day. The father shall have the child during the winter school vacation in odd years and the mother shall have the child in even years. The mother shall have the child for the spring school vacation in odd years and the father shall have the child in even years. Said vacation will commence at 6:00 p.m. on the last day of school and end on the Sunday before school resumes at 6:00 p.m.; and it is further
ORDERED, that the mother shall have two non-consecutive periods of two weeks summer vacation with the child during the months of July and August. The mother must notify the father in writing no later than April 30, of each year of the dates that she designates to have the child with her. In the event that the child attends sleep-away camp, the parents will divide equally the remaining time between them; and it is further
ORDERED, that the parties will alternate the Thanksgiving holiday with mother having the child in even years and the father having the child in odd years. Said Thanksgiving visitation will occur from Thursday, Thanksgiving Day at 10:00 a.m. through Friday at 6:00 p.m. and it is further
ORDERED, that the parties will alternate the remaining major holidays as follows effective:
EvenOdd
New Year's DayMotherFather
Mid-Winter School BreakMotherFather
Easter and School Recess FatherMother
July 4thMotherFather
Christmas Day & School Recess MotherFather
Christmas EveFatherMother
ORDERED, that the parties shall continue to share the subject child's birthday and it is further
ORDERED, that there shall be other visitation as the parties agree; and it is further
ORDERED, that the mother's petition is dismissed with prejudice for failure of proof; and it is further
ORDERED, that the Judgment of Divorce continues except as modified.
This constitutes the Decision and Order of the Court.
Dated: December 16, 2005